WESLEY LEE v. AMERICAN ENKA CORPORATION AND FRED BAKER.

(Filed 24 November, 1937.)

1. Master and Servant § 36—

The North Carolina Workmen's Compensation Act is founded upon mutual concessions of the employers and employees covered by the act, and is constitutional as a valid exercise of the police power of the State.

2. Master and Servant § 37—

The purpose of the Workmen's Compensation Act is to afford employees an expeditious remedy to recover for injuries compensable under the act without regard to whether such injuries were caused by the negligence of the employer.

**3. Master and Servant § 38—Employers and employees within scope of Compensation Act are bound thereby, in absence of notice to contrary.**

All employers and employees not coming within those specifically excepted from the operation of the Workmen's Compensation Act by sec. 14 of the act, are conclusively presumed to have accepted the provisions of the act and are bound thereby unless they give notice to the contrary in writing or print in apt time to the Industrial Commission. N. C. Code, 8081 (k), and where the facts admitted or agreed establish that defendant employer regularly employed more than five employees in its manufacturing plant, and that no notice of an election not to be bound by the act was given by defendant employer or plaintiff employee, the parties are bound by its provisions.

**4. Master and Servant § 40a—Injuries compensable under Compensation Act.**

Under the Compensation Act injuries by accident arising out of and in the course of the employment are compensable regardless of whether the accident was the result of the employer's negligence, but injuries not resulting from an accident arising out of and in the course of the employment, and diseases which do not result naturally and unavoidably from an accident are not compensable, N. C. Code, 8081 (i), subsec. (f).

**5. Master and Servant § 37—By accepting provisions of Compensation Act the parties make mutual concessions in regard to liability for injuries.**

The Workmen's Compensation Act is not compulsory, as either the employer or the employee may reject its provisions by proper notice to the Industrial Commission, but where its provisions are accepted by the parties they are bound by the mutual concessions therein provided under which the employer is required to pay for injuries compensable regardless of whether the accident resulting in injury was caused by its negligence, and the employee gives up his right of action at common law for injuries caused by negligence.

**6. Master and Servant § 49—Compensation Act excludes right of action at common law for injuries which are not compensable under the Act.**

Plaintiff instituted this action against his employer in the Superior Court, alleging that he contracted tuberculosis as a result of breathing sulphuric acid in the course of his employment, and alleging acts and omissions on the part of the employer constituting negligence proximately causing the injury. The facts admitted or agreed established that the parties were bound by the Workmen's Compensation Act, and the Superior Court dismissed the action for want of jurisdiction. *Held:* Even though the injury is not compensable under the Compensation Act, the Superior Court properly dismissed the action, since plaintiff, by accepting the provisions of the Compensation Act, surrendered his right to maintain an action at common law to recover for an injury caused by the negligence of his employer, and in exchange therefor received the benefit of the employer's assumption of liability for injuries compensable under the act regardless of negligence. N. C. Code, 8081 (r).

APPEAL by plaintiff from *Phillips, J.,* at March Term, 1937, of SWAIN. Affirmed.

This is an action to recover damages for personal injuries suffered by the plaintiff which resulted from a disease, to wit, tuberculosis, which plaintiff contracted while at work as an employee of the defendant, American Enka Corporation, in Swain County, North Carolina, under the supervision of the defendant, Fred Baker, superintendent of the defendant corporation.

The action was begun in the Superior Court of Swain County.

In his complaint the plaintiff for his cause of action against the defendants alleged:

1. That the plaintiff is a citizen of North Carolina and a resident of Swain County in said State.

2. That the defendant, American Enka Corporation, is a corporation, duly created, organized and existing and at the time of the grievances hereinafter complained of was and still is engaged in the manufacture of rayon from paper and wood pulp, and other ingredients, and has and maintains its principal office and place of business at Enka, Buncombe County, North Carolina, where it owns, has, maintains, and operates a large factory and plant for the purposes aforesaid.

3. That at the time of the grievances hereinafter complained of the defendant Fred Baker was in the employ of the defendant corporation as a foreman and as superintendent of the said rayon plant, and was in charge of what is known as the spinning room and acid room, and at the time aforesaid the defendant corporation had invested the said Fred Baker with power to supervise, control, and direct the operations in said plant, and to supervise, order and direct the employees employed and working in said department, and in like manner had invested the said Fred Baker with power and authority to employ and discharge hands and laborers and to report them for disobedience of orders and thereby procure their discharge and at the time aforesaid the said Fred Baker was a citizen of North Carolina and a resident of the city of Asheville, in Buncombe County, North Carolina.

4. That the plaintiff was employed by the defendant corporation in June, 1933, and remained continuously in the employment of the defendant corporation until the ... day of ........ .., 1934, at which time the plaintiff, because of the diseases and grievances hereinafter complained of, which were caused and sustained by reason of the wrongful, careless, and negligent acts and omissions of the defendants, was forced to give up and abandon his said employment with the defendant corporation.

5. That when the plaintiff entered the employment of the defendant corporation he was ordered and directed by the defendants and each of them to work in the spinning department of said acid room, and in the course of his employment was required by the defendants and each of them to assist in cleaning out large tanks, holding thousands of gallons

of sulphuric acid and other chemicals; that the plaintiff was required to work in and around said large tanks or vats, containing chemicals and sulphuric acid and other acids, which were used in said manufacturing plant, and plaintiff was ordered and directed and required to work in the spinning room in said plant and to handle pulp frisco, which was then and there manufactured in said plant from wood fibre and other materials which were soaked and treated with the aforesaid chemicals, sulphuric acid and other acids, which were stored in said large tanks or vats.

6. That in cleaning the said tanks and vats plaintiff was ordered and required to get inside same, and it was impossible to clean out said tanks and vats in any other manner, and in working in said spinning room it was necessary for plaintiff to move and handle the aforesaid frisco pulp which had been treated with said sulphuric acid and other chemicals. That said sulphuric acid and chemicals used by defendants in defendant corporation's said plant as aforesaid gave off and emitted poisonous and deleterious fumes and gases which were irritating and injurious to human flesh and tissues, and in coming in contact with human flesh or the human body, naturally and in the course of events, caused serious and permanent injuries, and said fumes and poisonous gases are particularly injurious and irritating to the throat and lungs, and if inhaled and breathed over a long period of time will cause tuberculosis of the lungs and throat, all of which were well known to the defendant.

7. That in the manufacture of rayon in said plant of the defendant corporation it became and was necessary for the defendant to use said sulphuric acid and other chemicals in the treatment of wood pulp and other fibre which they thereby converted into rayon or artificial silk, and that no other process or means could be used by the defendants in said plant in the manufacture of rayon or artificial silk; that on account of the composition and inherent nature of said sulphuric acid and other chemicals, hereinafter referred to, irritating and dangerous fumes and gases were constantly thrown off and emitted by same, and on account of the peculiar composition and nature of said sulphuric acid and other chemicals, when same were used in the manufacture of rayon, it was impossible to prevent said poisonous fumes and gases from being thrown off and emitted therefrom.

8. That the defendants and each of them well knew of the essential nature and composition of said sulphuric acid and other chemicals used by the said plant in the manufacture of rayon, or artificial silk, and it was well known to the defendants and each of them that said sulphuric acid and other chemicals, constantly and in the usual course of events, throw off and emit poisonous gases and fumes which were injurious

to human flesh and tissues, and were especially dangerous, irritating and injurious to the throat and lungs of any person inhaling and breathing the said fumes and gases.

That the plaintiff was inexperienced in work of the aforesaid kind and character in and around rayon plants and was ignorant of the nature and composition of said sulphuric acid and other chemicals, and defendants and each of them negligently, carelessly, and recklessly failed to warn and notify the plaintiff that said poisonous and irritating fumes and gases were constantly thrown off and emitted by the said sulphuric acid and other chemicals as aforesaid, and of the danger to the plaintiff from breathing and inhaling same.

9. That from the time of his employment in June, 1933, plaintiff worked as aforesaid in said rayon plant for a period of about one year and six months, and during all of said time was constantly subjected to the aforesaid poisonous and irritating gases, and constantly breathed and inhaled same, without any warning from defendants, until plaintiff's lungs were injured and weakened and plaintiff was caused thereby to contract tuberculosis of the lungs, which was directly and proximately caused by plaintiff's breathing and inhaling said poisonous fumes and gases, and during the period of his aforesaid employment plaintiff alleges that if he had known of the danger of breathing and inhaling said poisonous fumes and gases, or had had any knowledge of the effect of breathing and inhaling said fumes and gases in his lungs, he would have immediately left said employment and not encountered or subjected himself to the peril and hazard of working in and around said sulphuric acid and other chemicals.

10. That the disease of tuberculosis of the lungs, which plaintiff contracted as aforesaid, was caused and brought about in the usual and ordinary course of events and was incidental and essential to the particular employment in which the plaintiff was engaged. That the plaintiff was not accidentally injured, but contracted and acquired tuberculosis which was proximately caused and produced by the constant breathing and inhalation of said poisonous fumes and gases for a long period of time, and plaintiff's lungs were thereby weakened and impaired gradually without his knowledge, and tuberculosis of the lungs was thereby caused and developed as aforesaid.

11. That the defendants, and each of them, carelessly, negligently and wrongfully failed to warn and notify the plaintiff that the said sulphuric acid and other chemicals emitted said poisonous fumes and gases, although this was well known to the defendants and each of them, and each of the defendants carelessly, negligently, and wantonly assured plaintiff that the fumes and gases emitted by said sulphuric acid and other chemicals were harmless and would not injure him in any manner,

and defendants thereby negligently, carelessly, and recklessly misled, permitted, allowed and induced the plaintiff to continue in his said employment and to breathe said poisonous fumes and gases without any warning of the danger thereof, and plaintiff avers that the said careless, negligent, and tortious act, conduct and omission of said defendants, and each of them, directly, jointly, concurrently, and proximately contributed to, and were the direct, joint, concurrent, and proximate cause of plaintiff's said injuries, and he avers by reason thereof, and as the direct and proximate result thereof, the plaintiff was seriously and permanently injured, in that he was caused to contract tuberculosis of the lungs as aforesaid, and his health has thereby been permanently injured and ruined, and plaintiff's lungs and other organs of his body have been diseased by reason of his inhaling said poisonous gases as aforesaid.

"That plaintiff was forced to quit work and on account of his weakened condition has been unable to work and perform manual labor, and that he has thereby been caused great suffering and agony, and has been compelled to spend large sums of money for medical treatment, and plaintiff alleges further that his lungs are so diseased and weakened that he will never be able to do any more work or manual labor, but will remain a hopeless invalid for the remainder of his life, unable to earn a living for himself and his family; that before his said injuries plaintiff was a strong, able-bodied man and earned the sum of $18.00 per week, and worked regularly, and that since suffering the injuries aforesaid he has been unable to earn any sum whatever, and that by reason of the matters and things herein pleaded the plaintiff alleges that he has been damaged in the sum of $30,000."

In their answer the defendants denied each and all the material allegations of the complaint, and in support of their contention that the plaintiff cannot maintain this action, and of their prayer that the action be dismissed, alleged:

"That if the plaintiff was injured as alleged in the complaint, which is again denied, then the defendants aver that said injuries arose out of and in the course of the employment of the plaintiff by the defendant, American Enka Corporation, and the defendants further aver that the North Carolina Workmen's Compensation Act provides an exclusive remedy between employers and employees; that during the entire period of the employment of the plaintiff by the defendant, American Enka Corporation, the plaintiff and the said defendant were each subject to, were operating under, and were bound by the terms of the North Carolina Workmen's Compensation Act, respectively, to pay and to receive compensation according to the provisions of said act, for all injuries to the plaintiff arising out of and in the course of his employment by

the said defendant, and the terms and provisions of the North Carolina Workmen's Compensation Act are pleaded in bar of plaintiff's right to maintain this action, or to recover of the defendants damages by this action."

At the trial of this action a stipulation was entered in the record as follows:

"It is stipulated and agreed by and between the plaintiff and the defendants that during all the time the plaintiff was in the employment of the defendant, American Enka Corporation, as alleged in the complaint, the said American Enka Corporation had regularly in its employment more than five persons, and that neither the plaintiff nor the said defendant had given notice to the North Carolina Industrial Commission, in writing, that they or either of them intended not to be bound by the provisions of the North Carolina Workmen's Compensation Act.

"By this stipulation the plaintiff does not concede that the North Carolina Industrial Commission had jurisdiction of plaintiff's cause of action against the defendants, as alleged in the complaint in this action."

On the facts alleged in the complaint and admitted in the answer, and on the stipulation appearing in the record, the court was of opinion that the plaintiff cannot maintain this action, for the reason that the Superior Court of Swain County has no jurisdiction of the cause of action alleged in the complaint, and accordingly rendered judgment dismissing the action.

The plaintiff excepted to the judgment and appealed to the Supreme Court, assigning error in the judgment.

*Edwards & Leatherwood for plaintiff.*
*J. Bat Smathers and S. G. Bernard for defendants.*

CONNOR, J. Chapter 120, Public Laws of North Carolina, 1929 (the North Carolina Workmen's Compensation Act), became effective as to all its provisions and for all its purposes on 1 July, 1929. The act since said date has been and, as amended from time to time, is now in full force and effect as the law of this State. It was enacted by the General Assembly in the exercise of its police power, and is constitutional and valid in all respects. *Hanks v. Utilities Co.,* 204 N. C., 155, 167 S. E., 560; *Heavner v. Lincolnton,* 202 N. C., 400, 162 S. E., 909; *Hagler v. Highway Commission,* 200 N. C., 733, 158 S. E., 383. The purpose of the act is to provide compensation for an employee in this State who has suffered an injury by accident which arose out of and in the course of his employment, the compensation to be paid by the employer, in accordance with the provisions of the act, without regard to

whether the accident and resulting injury was caused by the negligence of the employer, as theretofore defined by the law of this State. See *Winslow v. Carolina Conference Association,* 211 N. C., 571, 191 S. E., 403. The right of the employee to compensation, and the liability of the employer therefor, are founded upon mutual concessions, as provided in the act, by which each surrenders rights and waives remedies which he theretofore had under the law of this State. The act establishes a sound public policy, and is just to both employer and employee. *Conrad v. Foundry Co.,* 198 N. C., 723, 153 S. E., 266. As administered by the North Carolina Industrial Commission, in accordance with its provisions, the act has proven satisfactory to the public and to both employers and employees in this State with respect to matters covered by its provisions.

It is provided by section 2, paragraph (a) of the act that the term "employment" as used therein includes all private employments in which five or more employees are regularly employed in the same business or establishment. The act is applicable to all employers and employees in this State, except those specifically excepted or exempted from its provisions, sec. 14. As to all employments not specifically excepted or exempted, in the absence of a notice in writing or in print, to the contrary, given in apt time to the North Carolina Industrial Commission, which is created by the act and charged with its administration, it is conclusively presumed that both the employer and the employee have accepted the provisions of the act, the one to pay and the other to accept compensation for an injury suffered by the employee by an accident which arose out of and in the course of his employment. In such case both the employer and the employee are bound by the provisions of the act. Sec. 4, N. C. Code of 1935, sec. 8081 (k).

On the facts alleged in the complaint, and admitted in the answer, and agreed at the trial of the instant case, as appears from the stipulation in the record, both the plaintiff, as an employee and the defendant, American Enka Corporation, as an employer, are conclusively presumed to have accepted the provisions of the North Carolina Workmen's Compensation Act, and are bound by said provisions with respect to injuries suffered by the plaintiff, by accident which arose out of and in the course of his employment, not including, however, a disease in any form which did not result naturally and unavoidably from the accident. Sec. 2, N. C. Code of 1935, 8081 (i), paragraph (f).

Under the provisions of the North Carolina Workmen's Compensation Act an employee, when both he and his employer are subject to the provisions of the act, has a right to compensation in accordance with its provisions only for an injury as defined in paragraph (f) of section 2 of the act, N. C. Code of 1935, sec. 8081 (i), which is as follows:

" 'Injury' and 'personal injury' shall mean only injury by accident arising out of and in the course of the employment, and shall not include a disease in any form except when it results naturally and unavoidably from the accident."

Such injury is compensable under the provisions of the act, without regard to whether it was the result of an accident which was caused by the negligence of the employer. An injury is not compensable, however, under the provisions of the act where it was not the result of an accident which arose out of and in the course of the employment, nor where the injury is a disease in any form, unless such disease resulted naturally and unavoidably from an accident.

By his acceptance of the act as binding upon him in all its provisions, an employee surrenders his right in the event his injury was caused by the negligence of his employer, without fault on his part, to recover of his employer damages for his injury to be assessed by a jury in accordance with well settled principles of law, and the employer agrees to pay compensation to his employee for his injury, without regard to whether the injury was caused by his negligence, and in such case surrenders his right to invoke certain defenses which are well recognized in the law of this State as bars to a recovery by the employee of damages for his injury, although the injury was caused by the negligence of the employer. The validity of the North Carolina Workmen's Compensation Act has been upheld because of the mutual concessions of employer and employee under its provisions. The act is not compulsory. It is expressly provided therein that it shall be binding on an employer and an employee only when it has been accepted by both. Either may reject its provisions as applicable to him.

The remedy provided by the North Carolina Workmen's Compensation Act for the enforcement by both an employer and an employee of their mutual rights under its provisions is a proceeding begun and prosecuted before the North Carolina Industrial Commission, which is created by the act. It is provided in the act that processes and procedure in a proceeding before the Industrial Commission shall be as summary and simple as reasonably may be. The proceeding is conducted under rules prescribed by the Industrial Commission and is usually expeditious and satisfactory in its results to both employer and employee. An award made by the Industrial Commission in accordance with its findings of fact and conclusions of law is ordinarily conclusive and final. Only its conclusions of law may be reviewed by the courts on an appeal from its award in a proceeding begun and prosecuted before the Industrial Commission for compensation under the provisions of the North Carolina Workmen's Compensation Act.

The question presented by this appeal is whether in a case where both an employee and his employer are subject to the provisions of the

North Carolina Workmen's Compensation Act, neither having rejected said provisions, it being conclusively presumed for that reason that both have accepted said provisions, and where the employee has suffered an injury while engaged in the performance of the duties of his employment, which is not compensable under the provisions of the act, because the injury was not by accident which arose out of and in the course of the employment, but is a disease which did not result naturally and unavoidably from an accident, but was the result of 'conditions which are not attributable to negligence on the part of the employer, has the employee the right to recover damages of the employer to be assessed by a jury, and for that purpose to maintain an action in the Superior Court against the employer?

The answer to this question requires a consideration of a provision of the North Carolina Workmen's Compensation Act which is as follows:

"The rights and remedies herein granted to an employee, where he and his employer have accepted the provisions of this act, respectively, to pay and accept compensation on account of personal injury or death by accident, shall exclude all other rights and remedies of such employee, his personal representatives, parents, dependents, or next of kin, as against his employer, at common law or otherwise, on account of such injury, loss of service, or death." Sec. 11, N. C. Code of 1935, sec. 8081 (r).

When the plaintiff in this action failed to reject the North Carolina Workmen's Compensation Act, as applicable to his employment by the defendant, American Enka Corporation, and thereby became subject to its provisions, in consideration of the liability assumed by the said defendant to pay to him compensation for an injury which he might suffer by an accident arising out of and in the course of the employment, without regard to whether the accident and resulting injury were caused by its negligence, he surrendered his right to recover of the defendant damages for an injury caused by the negligence of his employer, and waived his right to maintain an action in the Superior Courts of this State to recover such damages. See *Pilley v. Cotton Mills,* 201 N. C., 426, 160 S. E., 479, and *Francis v. Wood Turning Co.,* 208 N. C., 517, 181 S. E., 628.

The validity of the North Carolina Workmen's Compensation Act, by which rights are conferred upon employees and liabilities imposed upon employers in this State upon the principle of mutual concessions, is largely dependent upon the foregoing provision of the act.

In view of said provision there is no error in the judgment dismissing this action. The judgment is

Affirmed.